ANDRÉS FLORES, Appellant, *v.* REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1224. Submitted November 3, 1947.—Decided December 9, 1947.

*José Rosario Gelpí* for appellant. The registrar appeared by brief.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

On November 25, 1937, Ernesto Flores Rodríguez and his wife Amada Bulls mortgaged an urban property to secure two notes to bearer for $2,500 each, maturing on November 25, 1939. The mortgage was recorded in the Registry of Property.

On June 22, 1938, Amada Bulls died intestate and her children Ana Nereida, Pedro Ernesto, Nora Catalina, Roberto, Elmo, and Noé were declared her sole and universal

heirs together with her surviving spouse, the latter in the legal usufructuary share.

By deed No. 14 of January 19, 1947, Roberto Flores Bulls assigned to his father Ernesto Flores Rodríguez his share in the inheritance of his mother Amada Bulls. Upon recording said document the following was stated:

". . . the aforesaid Roberto Flores Bulls . . . assigns, waives and conveys, transfers and transmits, by sale, real and effective, in favor of Ernesto Flores Rodríguez, . . . *all his hereditary shares, that is, every right, share, participation, title and interest which he has or may have* and which appertain or may appertain to him *in every kind of property left* by his deceased mother, doña Amada Bulls Irizarry, either personal or real, movable or immovable, fruits and crops, mortgage credits . . . *left by his predecessor at her death . . .* " (Italics ours.)

Subsequently, by deed of March 15, 1947, before Notary José Rosario Gelpí Bosch, the heirs, Ana Nereida, Noé, Nora, and Elmo Flores Bulls, sold to their father their rights and shares in said urban property. In the recordation of this document the following was stated:

"Angel Morales . . . in his capacity as attorney-in-fact of Noé Flores Bulls, . . . ; Nora Flores Bulls, . . . ; Nereida Flores Bulls, . . .; Elmo Flores Bulls, . . ., convey to Ernesto Flores Rodríguez, . . . *every right and share, title or interest that said vendors have in property number . . .* " (Italics ours.)

Being owner of his one-half conjugal interest and of five-sixths of the other half of the property, the aforesaid Ernesto Flores Rodríguez, by deed of the same date, before the same notary, proceeded to cancel said mortgage, stating in the deed the following:

"FOURTH: Mr. Flores Rodríguez states that said mortgage credits have never been assigned, endorsed or conveyed to any person whatsoever, that he has always kept them in his possession and now wishing to cancel them in order that the whole mortgage hereinbefore mentioned duly recorded in the registry of property be cancelled, he hereby cancels said mortgage and to that effect he delivers to the

subscribing notary the two notes and the notary in the presence of the party, and of the witnesses, annuls them by crossing out the name of the debtors and writing across the face of said notes the word 'Cancelled' the said party consenting to the cancellation of the mortgage in the Registry of Property of San Germán."

On that same day and before the same notary, Ernesto Flores Rodríguez and his wife Teresa Cruz Vega, the former acting for himself and as attorney-in-fact of his son Pedro Ernesto Flores Bulls, sold the property of Andrés Flores for the amount of $12,000, stating that out of this amount, $1,000 belonged to Pedro Ernesto Flores Bulls. It is further stated that the sale included the usufructuary share appertaining to Ernesto Flores Rodríguez, as widower.

Upon presenting these last two deeds in the registry, the deed of sale was recorded in favor of Andrés Flores, with a note at the end of the deed stating that the property was encumbered by said mortgage. As regards the deed of cancellation its recordation was denied for the reasons stated in the registrar's note, to wit:

"The cancellation sought is hereby denied because as it appears from the registry the mortgage whose cancellation is sought secures two notes, both of them indorsable [1] and it has not been shown that said notes were legally indorsed or delivered to the appearing party Ernesto Flores Rodríguez, who executed them while married to his first wife, Amada Bulls, and without it having been shown that the heirs of said Amada Bulls had consented to said cancellation. A cautionary notice is entered instead for the statutory period in favor of the aforesaid Ernesto Flores Rodríguez, at folio 201 of volume 62 of Cabo Rojo, property No. 2496, by a marginal note in its 4th entry. San Germán on September 16, 1947. (Signed) Juan Juan Toro, Registrar."

---

[1] The registrar commits manifest error in classifying the notes to bearer signed by Ernesto Flores Rodríguez and his wife Amada Bulls as "notes indorsable". The indorsable note is issued to the order of a particular person who in order to convey the credit represented by the note must indorse it. The note to bearer, as its name shows, is not issued to the order of a particular person and the mere delivery of the document conveys the credit without the need of its holder showing how he acquired it.

Assuming that these notes to bearer which were never disposed of, were evidence of some credit in favor of the persons who executed them or their heirs, we would face the fact that at the time that all the heirs of Amada Bulls, with the exception of Pedro Ernesto Flores Bulls, assigned or sold to Ernesto Flores Rodríguez every interest which they might have in said property, they necessarily conveyed any right which they might have had in connection with said notes. Discarding these five heirs, the only persons who might be interested in said notes are Ernesto Flores Rodríguez and his son Pedro Ernesto Flores Bulls.

The problem being thus made simpler, the question to decide is whether Ernesto Flores Rodríguez had authority to cancel the note without the consent of Pedro Ernesto Flores Bulls.

Section 79 of the Mortgage Law (as amended by Act No. 18 of July 9, 1936, Third Special Session, p. 144) provides:

"Article 79.—A total cancellation may be demanded and must be ordered in the proper case:

" *       *       *       *       *       *       *

"2. When the recorded right is also completely extinguished; . . ."

And § 132 of the Regulations of the Mortgage Law, provides (as amended by Act No. 33 of March 7, 1912, p. 67):

"Art. 132.—A recorded property right shall be considered extinguished for the purposes of subdivision 2 of said article 79:

" *       *       *       *       *       *       *

"Second.—*       *       *       *       *       *       *

"In the case provided for in paragraph 2 of § 153[2] of the Law, when the interest disappears by will of the debtor, when he

---

[2] Subdivision two of § 153, as amended by Act No. 33 of March 7, 1912, p. 67, provides:

"Such obligations may be constituted by the owner of an estate or interest, without specifying the name of the creditor, executing them generically to the order of the person in whose favor the handwritten documents may be transferred or endorsed by the mortgagor."

has not disposed of the negotiable documents or securities to bearer, or should have reacquired them by tradition or endorsement of the person to whose order they were transferred."

Pursuant to the statutory provisions just cited, since the debtor did not dispose of the notes to bearer, the mortgage right may be considered extinguished at the will of the debtor and he may seek its cancellation. This leads us to consider what value, if any, did these notes to bearer have for the owners of the property when they were cancelled by Ernesto Flores Rodríguez about nine years after their maturity.

In discussing this question, Morell says:

" . . . In our statute, the debtor and the creditor cannot be the same person and the owner of a property cannot execute a mortgage thereon in his favor. The rights and the obligations being merged into one sole person, the mortgage shall stand recorded but no one can foreclose it, until by delivering the value of few, many or all the notes, third persons may present themselves who can claim the credits. While said notes are in the possession of the alleged debtor, since he owes nothing, nothing can be demanded from him and nothing can be demanded by him and the mortgage can oblige no one." *Comentarios a la Legislación Hipotecaria,* vol. 4 (2d ed. 1930), pp. 270–1.

According to our Mortgage Law, which considers the mortgage extinguished by will of the debtor when the notes either to bearer or indorsable, have not been disposed of, as well as under the theory set forth by Morell, the conclusion which we will reach in the present case will be the same: That the notes do not represent any value for the owners of the property, and therefore, the cancellation of the mortgage cannot prejudice anyone. On the contrary, the cancellation of the apparent lien benefited both co-owners as it enabled them to sell the property free of any lien. That being so, any of the co-owners who had in his possession the said notes could appear before a notary and, pursuant to the last paragraph of § 82 of the Mortgage Law (as amended by Act No.

22 of July 7, 1923, p. 218), execute the corresponding deed of cancellation.

The registrar's note is reversed and entry of the cancellation is ordered.

